**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION**

| | | |
|---|---|---|
| **WILLISTON BASIN INTERSTATE PIPELINE COMPANY,** | ) | **CIVIL ACTION NO. 1:09-cv-034** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **FACTORY MUTUAL INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**WILLISTON BASIN'S REPLY IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

## TABLE OF CONTENTS

**Page**

ARGUMENT ............................................................................................... 1

   A.  Williston Basin Owned The Gas Produced By The Howell/Anadarko Wells ................................................................................................. 1

   B.  SIXTH AND SEVENTH AFFIRMATIVE DEFENSES: The Natural Gas Coverage Applies To Gas Produced From All Of The Howell/Anadarko Wells ................................................................. 4

   C.  SECOND AFFIRMATIVE DEFENSE:  Williston Basin Timely Commenced Suit Under The Statute Of Limitation ..................................... 8

   D.  THIRD AFFIRMATIVE DEFENSE:  Williston Basin Timely Commenced Suit Under The Policies' Contractual Suit Limitation Provisions ................................................................................... 8

      1.  The Wyoming Endorsement Governs The Time Period For Filing Suit .................................................................................... 8

      2.  The Time Period For Filing Suit Was Contractually And Equitably Tolled ................................................................. 10

   E.  FOURTH AFFIRMATIVE DEFENSE:  The "Anti-Stacking Provision" Does Not Apply As A Matter Of Law ........................................ 11

   F.  FM's Affirmative Defenses Of Untimely Notice Of Loss And Untimely Or Defective Proof Of Loss Fail As A Matter Of Law ................................ 12

      1.  TWELFTH AFFIRMATIVE DEFENSE:  FM Waived Any Defense Based On Late Notice Of Loss .................................... 12

      2.  FOURTEENTH AFFIRMATIVE DEFENSE:  FM Is Barred From Asserting Defects In, Or the Untimeliness Of, Williston Basin's Proof Of Loss ........................................................ 13

   G.  SEVENTEENTH AFFIRMATIVE DEFENSE:  FM Fails To Establish Any Mysterious Disappearance / Unexplained Loss ................................... 13

   H.  NINTH AFFIRMATIVE DEFENSE:  FM Cannot Benefit From Williston Basin's Recovery From Howell/Anadarko Until Williston Basin Has Been Fully Compensated For Its Losses, Including The Expenses Of Obtaining Recovery ................................................................ 14

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Anzai v. Chevron Corp.*,
    168 F. Supp. 2d 1180 (D. Haw. 2001) ............................................... 15

*Belton v. Cincinnati Ins. Co.*,
    602 S.E.2d 389 (S.C. 2004) ........................................... 6

*Brewton v. Alabama Farm Bureau Mut. Cas. Ins. Co.*,
    474 So.2d 1120 (Ala. 1985) .......................................... 6

*Castleberry v. Collierville Med. Assocs., Inc.*,
    92 F.R.D. 492 (W.D. Tenn. 1981) ...................................... 3

*Citizens State Bank-Midwest v. Symington*,
    2010 ND 56, 780 N.W.2d 676 ......................................... 7

*Com. Union Ins. Co. v. Schmidt*,
    967 F.2d 270 (8th Cir. 1992) ......................................... 1

*Engebretsen v. Fairchild Aircraft Corp.*,
    21 F.3d 721 ............................................................. 4

*EOG Res., Inc. v. Badlands Power Fuels, LLC*,
    677 F. Supp. 2d 1143 (D.N.D. 2009) .................................... 10

*Fisher v. Am. Family Mut. Ins. Co.*,
    1998 ND 109, 579 N.W.2d 599 .......................................... 6, 7

*Gallagher v. City of St. Paul*,
    619 F.3d 823 (8th Cir. 2010) ......................................... 2

*Grinnell Mut. Reinsurance Co. v. Lynne*,
    2004 ND 166, 686 N.W.2d 118 .......................................... 6

*In re Lawrence W. Inlow Accident Litig.*,
    No. IP 99-0830-C H/G, 2001 WL 331625 (S.D. Ind. Feb. 7, 2001) .................... 1-2

*Kief Farmers Coop. Elevator Co. v. Farmland Mut. Ins. Co.*,
    534 N.W.2d 28 (N.D. 1995) ............................................. 11

*Luby v. Carnival Cruise Lines, Inc.*,
    633 F. Supp. 40 (S.D. Fla. 1986) ....................................... 3

iii

*Moody v. St. Charles County*,
    23 F.3d 1410 (8th Cir. 1994) ................................................................... 14

*Nat'l Am. Ins. Co. of Cal. v. Certain Underwriters at Lloyd's London*,
    93 F.3d 529 (9th Cir. 1996) ..................................................................... 13

*Olander v. State Farm Mut. Auto. Ins. Co.*,
    317 F.3d 807 (8th Cir. 2003) ................................................................... 10

*Perez-Trujillo v. Volvo Car Corp.*,
    137 F.3d 50 (1st Cir. 1998) .................................................................... 3 n.4

*Pro Serv. Auto., LLC v. Lenan Corp.*,
    469 F.3d 1210 (8th Cir. 2006) .................................................................. 2

*Prudential-LMI Commercial Ins. v. Superior Court*,
    798 P.2d 1230 (Cal. 1990) ...................................................................... 11

*Reid v. Cuprum SA, de C.U.*,
    2000 ND 108, 611 N.W.2d 187 ............................................................... 11

*Reishus v. Implement Dealers Mut. Ins. Co.*,
    118 N.W.2d 673 (N.D. 1962) .................................................................... 5

*St. Paul Travelers v. Millstone*,
    987 A.2d 116 (Md. 2010) ........................................................................ 10

*Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*,
    520 F.2d 289 (8th Cir. 1975) ................................................................. 14 n.8

**Statutes**

18 C.F.R. Pt. 201 (2010) ................................................................................ 4

N.D.C.C. § 9-07-09 (2009) ............................................................................ 6

N.D.C.C. § 9-07-10 (2009) ............................................................................ 6

N.D.C.C. § 26.1-32-07 (2009) ...................................................................... 13

N.D.C.C. § 26.1-32-08 (2009) ...................................................................... 13

N.D.C.C. § 26.1-38-09 (2009) ...................................................................... 12

N.D.C.C. § 26.1-39-06 (2009) ...................................................................... 10

Wyo. Stat. Ann. § 26-15-110 ............................................................................. 9

**Other Authority**

3 Lee R. Russ, *Couch On Insurance* § 41:1 (3d ed. 2010) ............................................. 5

Restatement (Second) of Conflicts of Laws § 193 (1971)............................................... 9

Revisions to Uniform System of Accounts, Forms, Statements, and Reporting
Requirements for Natural Gas Companies, Order No. 581, F.E.R.C. Stats. & Regs.,
1995 WL 594755 (Oct. 11, 1995)...................................................................... 4

*Webster's Third New International Dictionary* (unabr. 2002) ......................................... 7

FM's Opposition To Williston Basin's Motion For Partial Summary Judgment[1] fails to establish a genuine issue of material fact on any of the issues upon which Williston Basin seeks summary judgment.  Thus, Williston Basin's Motion must be granted.

### A.  Williston Basin Owned The Gas Produced By The Howell/Anadarko Wells.

Williston Basin's Motion included affidavits from experts in geochemistry and engineering attesting that the underground storage reservoir contained only injected storage gas, but no identifiable native gas, when Howell/Anadarko began production in 2002.  (Mem. pp. 8-9 ¶16, 14.)  FM does not contest that Williston Basin owned all injected cushion gas in the reservoir, but argues a factual dispute exists regarding whether the reservoir contained native gas that Williston Basin did not own.  FM identifies no competent evidence native gas is present to defeat summary judgment.  *Com. Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992).

FM relies primarily on the April 28, 2009 "Report, Recommendations and Findings of Special Master" ("Recommendation") in the Howell/Anadarko litigation.  (Opp. p. 5-6, 15.)[2] The Wyoming Court's order appointing the Special Master provided that his reports were "recommendations only" unless and until the court adopted them and that no factual finding of the Special Master was admissible.  (Am. Or. Appointing Special Master at 8, ¶ 8, att. as Ex. 1.) Both parties timely objected to the Recommendation and the case settled before the Wyoming Court decided the objections.  The Recommendation, never adopted by the Wyoming Court and not part of any final judgment, is irrelevant and inadmissible hearsay with no binding effect.  *See In re Lawrence W. Inlow Accident Litig.*, No. IP 99-0830-C H/G, 2001 WL 331625, at *3 (S.D.

---

[1] The shorthand references are:  "Memorandum" or "Mem." are to "Williston Basin's Memorandum In Support Of Its Motion For Partial Summary Judgment" (DE #178); "Opposition" or "Opp." is to "Factory Mutual's Memorandum In Opposition To Williston Basin's Motion For Partial Summary Judgment" (DE #199); "Williston Basin Opp." is to "Williston Basin's Memorandum In Opposition To Factory Mutual's Motion for Summary Judgment" (DE #145).

[2] FM incorrectly cites the Special Master's report.  The cite is:  DE #66-4 at WBI-MDU 0006718–64.

Ind. Feb. 7, 2001) (sustaining objection to use of special master's report from state probate proceeding in summary judgment proceeding in another action). It does not create a disputed issue here. Even if admissible, the Recommendation does not create a factual dispute. The Special Master did not find or state that native gas was present in the reservoir when Howell/Anadarko began production. That issue was in dispute and not presented to the Special Master for decision.

More to the point, however, the issue is not whether there was native gas in the reservoir, but rather whether Howell/Anadarko produced any native gas, because Williston Basin's claim is for loss of its gas from Howell/Anadarko's production. On this point, FM cites expert reports from the underlying litigation discussing the composition of the gas produced at the Howell/Anadarko wells, but none of these authors has been endorsed to testify in this case, making their reports and conclusions (whatever their merit) inadmissible hearsay that cannot defeat summary judgment. *See Gallagher v. City of St. Paul*, 619 F.3d 823, 842 (8th Cir. 2010).[3] FM's consequent inability to cite admissible expert evidence of native gas production dooms its opposition, because the determination of whether the Howell/Anadarko wells produced native or injected gas requires geochemical comparisons and explanations not within the ordinary experience or knowledge of lay people. In order to dispute the science of Williston Basin's experts, FM must present competent and admissible expert testimony to the contrary, which it does not have. *Pro Serv. Auto., LLC, v. Lenan Corp.*, 469 F.3d 1210, 1214 (8th Cir. 2006) ("expert testimony is necessary where 'the lay jury does not possess the experience or knowledge of the subject matter sufficient to enable them to reach an intelligent opinion without help'"). FM's footnote claim that it will attack the credibility of Williston Basin's experts at trial is a

---

[3] Further, the report of Williston Basin's initial geochemistry expert, given early in the case against Howell/Anadarko, was based on very limited, preliminary data and was withdrawn (the expert never testified) due to the discovery of errors in that data. (Castleberry Dep. 203:4 – 24, Ex. 2 hereto.)

2

product of sheer desperation (Opp. p. 16 n.7); FM offers no evidence here of any such attack to defeat summary judgment.  *Castleberry v. Collierville Med. Assocs. Inc.*, 92 F.R.D. 492, 494 (W.D. Tenn. 1981) ("where the opposing party presents no evidence sufficient to make an issue of the expert's credibility, such as contrary opinion evidence or evidence tending to undermine the credibility or qualifications of the expert, and where the trier of fact would not be at liberty to disregard arbitrarily the unequivocal, uncontradicted, and unimpeached testimony of the expert, his testimony may form the basis for summary judgment"); *Luby v. Carnival Cruise Lines, Inc.*, 633 F. Supp. 40, 42 n.3 (S.D. Fla. 1986) ("Where, as here, an issue is one of the kind on which expert testimony must be presented, and the affidavit of the expert is uncontradicted, summary judgment is proper.").[4]

FM's assertion that Williston Basin's proofs of loss show Howell/Anadarko produced native gas is a misrepresentation.  Dr. Martin Schoell, whose report Williston Basin included with its proofs of loss, concluded that more than 97% of the gas produced by the Howell/Anadarko wells was injected storage gas with the remaining small volume (<3%) being gases picked up from petroleum liquid during migration of the injected gas to the Howell/Anadarko wells.  (DE #66-3 at WBI-MDU 0006698.)  The produced gas is therefore entirely injected storage gas modified slightly by interaction with petroleum liquid.  (*Id.*) Williston Basin's geochemist in this litigation, Dr. Michael Whiticar, expressly considered and expanded upon Dr. Schoell's analysis to conclude that 100% of the gas produced by the Howell/Anadarko wells was injected storage gas.  (Whiticar 9/20/10 Decl. ¶¶ 8, 9(a)-(h), Ex. 1 pp. 8-9, 35-48.)  Dr. Whiticar's conclusions are consistent with Dr. Schoell's findings, and will

---

[4] *Perez-Trujillo v. Volvo Car Corp.*, 137 F.3d 50 (1st Cir. 1998) does not hold otherwise.  That decision held that a conflict between eyewitness testimony and expert testimony regarding an automobile accident created a material issue of fact.  *Id.* at 56.  The nature of the accident did not require expert testimony of causation.  The geochemical evidence of identity is markedly different here.  In any event, FM has no comparable admissible "eyewitness" testimony.

be the evidence in this case. Dr. Schoell's findings are not admissible as the result of being considered by Dr. Whiticar in preparing his report. *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728-29 (6th Cir. 1994) (hearsay considered for expert opinion remained inadmissible under F.R.E. 703.)

Finally, FM fails to raise a genuine dispute through Williston Basin's regulatory accounting. There was some volume of native gas in the underground reservoir **in 1949** when the subsurface was certificated for storage, 50 years before Howell/Anadarko began production. FERC regulations require Williston Basin to capture the 1949 cost of the original native cushion gas in one account and the value of injected cushion gas in another. *See* 18 C.F.R. Pt. 201 (2010); Castleberry Dep. 35:19-36:13, 84:5-12, 195:25-196:13, 200:3-19; *Revisions to Uniform System of Accounts, Forms, Statements, and Reporting Requirements for Natural Gas Companies*, Order No. 581, F.E.R.C. Stats. & Regs., 1995 WL 594755, at *53023 (Oct. 11, 1995). There is no evidence in the record that this accounting convention represents native gas actually in the reservoir at this date. The evidence is that all molecularly "native" gas in place in the reservoir in 1949 has been replaced by injected gas, but the cost of that replacement gas must be reported at the same cost basis as the native gas it replaced. The injected gas serves the same function (cushion) as the original native gas but, because it is injected, indisputably belongs to Williston Basin. Moreover, FM's argument is misdirected for the reasons stated earlier – the accounting categories refer to gas still in the reservoir, not gas produced by the Howell/Anadarko wells from the reservoir.

## B. SIXTH AND SEVENTH AFFIRMATIVE DEFENSES: The Natural Gas Coverage Applies To Gas Produced From All Of The Howell/Anadarko Wells.

FM's Sixth and Seventh Affirmative Defenses assert respectively that Williston Basin has no coverage because the gas taken by Howell/Anadarko was not metered into the storage

reservoir and was produced at wells located more than 1,000' away from its certificated boundary. Williston Basin metered all gas injected into the reservoir (Mem. p. 16). FM's Opposition does not contest that showing. Summary judgment should enter against FM's Sixth Affirmative Defense because the admissible record shows that the Howell/Anadarko wells produced 100% metered, injected gas.

For its Seventh Affirmative Defense, FM first argues Williston Basin had no "insurable interest" in gas produced from wells located more than 1,000' outside the reservoir's certificated boundaries. "Insurable interest" refers to the insured's interest in *the property insured*. *See* 3 Lee R. Russ, *Couch on Insurance* § 41:1 (3d. ed. 2010) ("Insurable interest may be defined as any lawful and substantial economic interest in the safety or preservation *of the subject of the insurance* free from loss, destruction, or pecuniary damage.") (emphasis added); *Reishus v. Implement Dealers Mut. Ins. Co.*, 118 N.W.2d 673, 682 (N.D. 1962). The insured property in this case is the natural gas in storage. Williston Basin meets the requirement of an "insurable interest" because it paid for and owned the cushion gas in storage; the fact that certain wells that took the gas were located outside the certificated boundaries is not relevant. The Policies cover Williston Basin for loss of natural gas once metered into storage, as was indisputably the case for all injected gas. (Mem. p. 4, ¶ 5.)

FM contends that Williston Basin lost its ownership rights when the gas migrated outside of the certificated boundary of the reservoir and into property that Williston Basin did not own. The loss of ownership rights in personal property such as natural gas requires a showing of an intent to abandon or relinquish ownership (FM has the burden on summary judgment), which cannot be met simply by showing that the gas migrated off Williston Basin's property. (Mem. p. 14.) FM's Opposition does not show abandonment. Williston Basin therefore continued to

have an insurable interest, as the owner of the gas, as a matter of law.

FM's legal authorities are inapposite.  (Opp. p. 18.)  In *Brewton v. Alabama Farm Bureau Mutual Casualty Insurance Co.*, 474 So.2d 1120, 1123 (Ala. 1985), the insured had no insurable interest in property expected from a gratuitous testamentary gift.   In *Belton v. Cincinnati Insurance Co.*, 602 S.E.2d 389, 392 (S.C. 2004), the insured had no insurable interest because it had only a lease with an option to purchase, had defaulted on the lease, was in bankruptcy, and had no equity in the property when the coverage was issued.

FM's argument that the Policies cover natural gas only when located within the reservoir's certificated boundaries also fails.  The Policies cover physical loss or damage to natural gas in the "underground storage reservoir" with no express limitation of coverage only to gas located within the FERC-certificated boundaries.  Although "reservoir" is undefined in the Policies, North Dakota requires undefined terms or words to be interpreted according to their plain and ordinary meaning; technical words are to be interpreted in accordance with their common meaning in the industry to which they relate.  *Grinnell Mut. Reinsurance Co. v. Lynne*, 2004 ND 166, ¶ 21, 686 N.W.2d 118, 125; N.D.C.C. §§ 9-07-09 (2009), 9-07-10 (2009).  The plain and ordinary meaning of "reservoir", as well as the technical definition in the oil and gas industry, is a closed geologic structure capable of confining hydrocarbons, including gas.  The underground reservoir at Elk Basin met that definition.  (Mem. pp. 15-16.)

Had FM intended to limit coverage to gas only while it was located within the certificated boundaries (or 1,000' thereof), it was required to expressly state the limitation.  *Fisher v. Am. Family Mut. Ins. Co.*, 1998 ND 109, ¶ 6, 579 N.W.2d 599, 602.  FM not only failed to do so, it expressly defined the coverage by reference to the metering of natural gas into and out of the reservoir.  Furthermore, it defined the underground storage reservoir at Elk Basin as being "at"

"Location B001 – Powell, Wyoming", which was generically identified in the Location Description of the Policy's Schedule of Locations only as being on "Hwy 295, 12 miles N of Powell."  "At" is an expansive preposition commonly understood to "indicate presence in, on, or near".  *Webster's Third New International Dictionary* 136 (unabr. 2002).  FM's generic location description, combined with its failure to limit coverage to gas only within the reservoir's certificated boundaries, requires the conclusion that coverage applied to metered gas of Williston Basin located anywhere within the underground geologic storage reservoir.

FM's citation to purported extrinsic evidence of the drafting of the schedule of locations fails to raise a genuine factual dispute.  North Dakota law prohibits parties from using such evidence to vary clear and unambiguous policy language and further requires that ambiguities be construed in favor of the insured.  *Citizens State Bank-Midwest v. Symington*, 2010 ND 56, ¶ 19, 780 N.W.2d 676, 686 (clear and unambiguous contract language cannot be changed by parol testimony); *Fisher*, 1998 ND 109, ¶ 6, 579 N.W.2d at 602 ("any ambiguity or reasonable doubt as to the meaning of an insurance policy is strictly construed against the insurer and in favor of the insured").  Moreover, FM's only extrinsic evidence is testimony from Mary Bandle (an employee in the Risk Management Department of MDU Resources) that Williston Basin at some unidentified time provided FM with unidentified maps.  FM did not submit the maps with its opposition, has not shown the maps depicted the FERC-certificated boundaries,[5] and has provided no testimony that it relied upon or in any way considered the maps in underwriting any or all of the coverage; indeed, FM's own witnesses in sworn testimony negate FM's argument.[6] FM further fails to explain why, if it possessed and considered the maps showing a certificated

---

[5] Ms. Bandle testified she is unsure whether the maps she sent to FM included the certificated boundaries of the storage reservoir.  (Bandle Dep. 46:8-11.)
[6] FM senior management and underwriters denied using maps to identify or describe the location of the EBSR.  (Berger Dep. 225:7-227:3; Reinsberg Dep. 106:10-107:10; Strmic Dep. 106:4-10.)

boundary, it did not expressly use them to limit the coverage in the Policies.  The failure to use the information to expressly limit coverage proves Williston Basin's argument, not FM's.

### C. SECOND AFFIRMATIVE DEFENSE:  Williston Basin Timely Commenced Suit Under The Statute Of Limitation.

FM's sole response to Williston Basin's motion for summary judgment against the statute of limitation defense is to contend that Williston Basin's suit is time barred by the Policies' contractual suit limitation provisions, a separate defense.  Because FM does not show that Williston Basin's suit is untimely under the applicable statute, Williston Basin is entitled to summary judgment against this defense.

### D. THIRD AFFIRMATIVE DEFENSE:  Williston Basin Timely Commenced Suit Under The Policies' Contractual Suit Limitation Provisions.

FM fails to raise a genuine dispute about whether the Wyoming Endorsement governs the time for filing suit or that the time to sue was contractually or equitably tolled from at least August 3, 2007 to July 2009.  FM's Third Affirmative Defense therefore fails and the Wyoming endorsement applies.  (Mem. p. 23.)

#### 1.  The Wyoming Endorsement Governs The Time Period For Filing Suit.

The applicable state endorsement governs the contractual time period for filing suit under the Policies.  The Policies' express language, by specifying the applicable state endorsement based upon the *location of the insured property* at issue, refutes FM's contention that the forum chosen for litigation determines the applicable state endorsement.  (Williston Basin Opp. pp. 26-29; Policy Section E.4.C. ("The endorsements modify this Policy with respect to *any insured property located in the state in which the endorsement applies*.") (emphasis added).)  Insurance policies covering locations in multiple states commonly use state endorsements to bring the coverage into compliance with state law:

> A single policy may, for example, insure dwelling houses located in states X, Y and Z.  These states may require that any fire insurance policy on buildings situated within their territory shall be in a special statutory form.  If so, the single policy will usually incorporate the special statutory forms of the several states involved.  Presumably, the courts would be inclined to treat such a case, at least with respect to most issues, as if it involved three policies, each insuring an individual risk.  Restatement (Second) of Conflicts of Laws § 193 cmt. f (1971).

FM prepared and submitted the Wyoming Endorsement[7] to the Wyoming Insurance Commissioner for approval pursuant to Wyo. Stat. Ann. § 26-15-110.   FM concedes the Commissioner reviewed and approved the Endorsement to bring the coverage into compliance with Wyoming law for property in that jurisdiction.  (Opp. p. 29.)  It is nonsensical to argue that this purpose is thereafter frustrated simply because litigation occurred elsewhere.

FM's contention that the applicable state endorsement must be determined based on location of the litigation for "predictability" is baseless.  North Dakota does not prohibit parties from agreeing that a dispute heard in North Dakota is subject to the limitations period of another jurisdiction, for example, provided the choice is rational.  There is no stated public policy that requires any other degree of predictability or rationality.  If it matters, however, applying the endorsement of the particular state where the insured property is located allows far more predictability than deciding the applicable endorsement in the future based upon the forum where litigation is filed.  The former allows the endorsement to be ascertainable at the time the policy is entered into; the latter does not and encourages forum shopping.  The insured location at Elk Basin does not move, so basing the governing law on its location – when the litigation involves a claim for damage to property at that location – leads to an entirely predictable result.  Litigation, on the other hand, may be filed in multiple jurisdictions, so there is no way to predict the applicable law in advance of the inception of the litigation under FM's formula.

FM's concession that it added the suit limitation provision to the North Dakota

---

[7] The Wyoming and North Dakota Endorsements are identified in Williston Basin's Opp. pp. 26-29.

endorsement to comply with N.D.C.C. § 26.1-39-06 (2009) (Opp. p. 11-12) further shows an intent to apply the provision only to property located in North Dakota.  Section 26.1-39-06 expressly limits its applicability to coverage "on property in this state" (*i.e.*, North Dakota).

Section 26.1-39-06 also invalidates the three-year suit limitation provision in FM's North Dakota endorsement because that Section requires an insurer to allow a policyholder at least three years to bring "any suit or action under the contract or policy."  A claim for breach of insurance contract accrues upon breach, which occurs generally when the claim is denied but certainly no earlier than when notice of the claim is given.  (Mem. p. 20.)  The North Dakota Endorsement, which requires suit be brought within three years after *discovery of the loss*, violates Section 26.1-39-06, because the endorsement time period is less than the statutory requirement for three years from the date of the insurer's breach of the policy.  *See St. Paul Travelers v. Millstone*, 987 A.2d 116, 118-26 (Md. 2010) (contractual suit limitation provision violated statutory three-year minimum by imposing a "discovery of loss" accrual date).

## 2. The Time Period For Filing Suit Was Contractually and Equitably Tolled.

The operative provisions of the Tolling Agreement toll the time period for filing suit on "any" "Claim" (as defined), not just claims under the 2005 and 2006 policies.  (Mem. p. 22.) FM's attempted reliance on recitals to limit the effect of the Tolling Agreement to the 2005 and 2006 policies fails as a matter of law.  Recitals cannot be used to contradict, vary, or limit clear and unambiguous operative language.  *See Olander v. State Farm Mut. Auto. Ins. Co.*, 317 F.3d 807, 811 (8th Cir. 2003); *see also EOG Res., Inc. v. Badlands Power Fuels, LLC*, 677 F. Supp. 2d 1143, 1154 (D.N.D. 2009) (Hovland, J.) (recital that was a "mere description" and did not contain operative language was not binding under Texas law).  The Tolling Agreement expressly applies to all "Claims", as expressly defined, without limitation to any specific Policies.

Williston Basin's alternative argument for equitable tolling needs to be considered only if the Court were to conclude that the Tolling Agreement applies only to the 2005 and 2006 Policies.  Although the North Dakota Supreme Court has not specifically adopted equitable tolling, it has suggested it might consider doing so in the proper case.  *See, e.g., Reid v. Cuprum SA, de C.U.*, 2000 ND 108, ¶ 16, 611 N.W.2d 187, 190 (declining to adopt equitable tolling where doing so would not change outcome of case but leaving open the possibility of adopting it in a future case).  In the insurance context, the North Dakota Supreme Court has noted, without deciding, that equitable tolling may apply to a suit limitation provision.  *See Kief Farmers Coop. Elevator Co. v. Farmland Mut. Ins. Co.,* 534 N.W.2d 28, 34 n.5 (N.D. 1995) (citing *Prudential-LMI Commercial Ins. v. Superior Court*, 798 P.2d 1230, 1240 (Cal. 1990) (which Williston Basin relies upon for the application of equitable tolling in the circumstances presented here).  If necessary, the doctrine of equitable tolling provides a further basis to toll the time to file suit.

The Wyoming Endorsement, which allows four years from the discovery of loss to sue, applies to Williston Basin's claim for coverage.  FM's earliest claimed date of discovery (which Williston Basin disputes) is in 2004.  The time period for suit was tolled from at least August 3, 2007 to July 2009.  FM's contractual suit limitation defense therefore fails as a matter of law.

### E. FOURTH AFFIRMATIVE DEFENSE:  The "Anti-Stacking Provision" Does Not Apply As A Matter Of Law.

FM argues that the Policies' anti-stacking provision should be construed to provide that, where a loss continues for more than one Policy period, coverage is provided only by the Policy in effect at the time the loss begins.  (Opp. p. 20.)  FM's argument fails because in effect it requires the Court to rewrite the Policies to include limitations not found in their express language.  The Policies do not, as FM contends, state that only the Policy in effect at the time a loss begins provides coverage; instead, by covering "all risk of loss" to property, a Policy may

11

well be required to cover a loss that begins in the period of a prior Policy.  The anti-stacking provision similarly does not state that the first Policy in effect during an ongoing loss is the only one that provides coverage.  Instead, if the anti-stacking provision is read as applying to coverage in effect during future Policy periods, then each Policy in effect during an ongoing loss includes a provision that purports to apply itself in preference to all other applicable Policies. (Mem. pp. 24-25.)  The ambiguity is cured by construing the anti-stacking provision, as FM itself suggests in its own Policy Commentary (DE #44-6 at FMG134702), to apply only to other coverage in effect at the same time as the Policy containing the anti-stacking provision. (Mem. p. 25.)  Construed in this fashion, no FM Policy overlaps with the others and each would respond.  Williston Basin is entitled to summary judgment against the affirmative defense.

### F. FM's Affirmative Defenses Of Untimely Notice Of Loss And Untimely Or Defective Proof Of Loss Fail As A Matter Of Law.

#### 1. TWELFTH AFFIRMATIVE DEFENSE:  FM Waived Any Defense Based On Late Notice Of Loss.

FM does not dispute that it failed to specifically object to the timing of Williston Basin's notice of loss until its July 2, 2009 coverage rejection letter, nearly three years after Williston Basin's initial notice.  FM contends that it lacked sufficient information to provide a timely "prompt and specific" objection, as it was required to do, and that its generic reservation of rights preserved its right to object nearly three years later.  However, FM does not factually show that it gave prompt and specific objection when it says it first became aware of the grounds to object or what it did to promptly investigate the possibility.

Moreover, FM cites no supporting authority for its argument and its contention is inconsistent with N.D.C.C. § 26.1-38-09 (2009), which does not contain the exception that FM attempts to create.  The statute instead requires an insurer, if it has a concern about the timing of

notice, to promptly investigate and state a specific objection if the investigation provides a basis to do so.  The statute nowhere suggests that the insurer can generically reserve its rights, engage in a protracted investigation (here nearly three years) and then object to the timing of notice. FM's position conflicts with both the purpose and the express language of the statute and should be rejected.  *See Nat'l Am. Ins. Co. of Cal. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 538 (9th Cir. 1996) (involving substantively identical CAL. INS. CODE § 554; two-year delay in insurer's objection was "not a prompt objection by any definition").  Moreover, to the extent FM objects that Williston Basin's notice of loss lacked information necessary for FM to determine the timeliness of notice, it also has been waived.  *See* N.D.C.C. § 26.1-32-07 (2009).

### 2. FOURTEENTH AFFIRMATIVE DEFENSE:  FM Is Barred From Asserting Defects In, Or The Untimeliness Of, Williston Basin's Proof Of Loss.

FM admits it "never required" Williston Basin to submit a proof of loss, but contends it can nonetheless deny coverage based on alleged defects in the proof of loss that Williston Basin submitted.  (Opp. p. 28.)  N.D.C.C. § 26.1-32-08 (2009) requires rejection of FM's position because it required FM to provide Williston Basin with a "blank form of proof of loss" within 20 days of Williston Basin's notice of claim, or else waive any claim to receive a proof of loss.  By failing to provide the required form, FM withheld notice to Williston Basin of the matters about which it now objects.  The statute's waiver provision clearly intends that the insurer waive any assertion of defects in a proof of loss if the insurer fails to provide the required form.  The Court should reject FM's argument and grant summary judgment against its Fourteenth Affirmative Defense.

### G. SEVENTEENTH AFFIRMATIVE DEFENSE:  FM Fails To Establish Any Mysterious Disappearance / Unexplained Loss.

FM's mysterious disappearance and unexplained loss defenses are based on exclusions

from coverage on which FM bears the burden of proof. (Mem. p. 29.) Williston Basin asserted that FM has no evidence to support these defenses (*id.*), and FM's Opposition fails to submit evidence on which a jury could find in its favor on these defenses. *See Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (to defeat summary judgment, a party must support its allegations with sufficient probative evidence to allow a finding in the party's favor).

FM admits that the loss attributable to production from the Howell/Anadarko wells is neither mysterious nor unexplained. It argues, however, that loss suffered through other means is within the exclusion, but fails to point to evidence that Williston Basin seeks to recover for any such loss. The unsigned and unsworn notes by FM's consultant, IGC, which state only that "Gas loss is a normal part of storage field operations [and] typical numbers are at the 1% of injected volume or less", do not create a disputed issue. The notes nowhere suggest that Williston Basin lost any amount of gas from its storage reservoir as the result of routine operations or, more importantly, that Williston Basin seeks coverage for any such loss (the claim is for the measured production at the Howell/Anadarko wells). The report of FM's litigation expert, David Hayden, fails to show any material factual dispute for the same reasons. FM's assertion that Howell/Anadarko's production was not entirely storage gas is likewise unsubstantiated. (*Supra* pp. 1-4.) FM's Seventeenth Affirmative Defense fails for lack of supporting evidence.[8]

### H. NINTH AFFIRMATIVE DEFENSE: FM Cannot Benefit From Williston Basin's Recovery From Howell/Anadarko Until Williston Basin Has Been Fully Compensated For Its Losses, Including The Expenses Of Obtaining Recovery.

FM does not dispute the applicability of the made-whole doctrine but instead seeks to sidestep its application. The issue is whether Williston Basin can allocate gas recovered from

---

[8] FM asserts that summary judgment cannot be granted until Williston Basin's experts have been deposed but fails to make the required showing. Rule 56(f) requires a party to show by affidavit why it cannot yet respond to the evidence presented and how a delay would enable it to do so. *Willmar Poultry Co. v. Morton-Norwich Prods., Inc.*, 520 F.2d 289, 297 (8th Cir. 1975).

Howell/Anadarko to fully compensate it during time periods in which it did not have coverage for gas loss. The made-whole doctrine says that it can, *i.e.,* that Williston Basin is entitled to recover entirely for its loss of gas (to be made whole) before FM can benefit from the recovery of gas from Howell/Anadarko. (Mem. pp. 30-32.) FM fails to cite any authority for its argument that Williston Basin is required to allocate the recovery from Howell/Anadarko on a *pro rata* basis so that FM, which contributed nothing to the recovery, can benefit from it to the same extent as Williston Basin. The made-whole doctrine does not support FM's position.

FM contends that Williston Basin cannot recover for gas lost prior to July 11, 2003 (when the 2003 Policy was amended) or after January 1, 2007 (because Williston Basin did not have gas loss coverage). Williston Basin disputes FM's contentions regarding the period of coverage; even if FM were correct, its argument does not reduce the amount of Williston Basin's claim. Howell/Anadarko's total production (and Williston Basin's resulting loss) during the periods in which Williston Basin allegedly lacked coverage was less than the 8.2 Bcf recovered from Howell/Anadarko. (*See* Ex. A to Ex. 1 to Towler 9/20/10 Decl. (DE #159-3).) The Court should enter summary judgment that the made-whole doctrine applies and Williston Basin may allocate the recovery from Howell/Anadarko entirely to loss not covered by insurance before FM is entitled to benefit from the recovery. (Memo. pp. 30-32); *see Anzai v. Chevron Corp.*, 168 F. Supp. 2d 1180, 1183 (D. Haw. 2001) (summary judgment on a legal issue resolving less than an entire claim is appropriate where the ruling "will have an immediate impact on the proofs to be offered at trial"). Such allocation leaves Williston Basin with an unsatisfied loss of approximately 5.1 Bcf to recover from FM.

Dated:  November 19, 2010                    Respectfully submitted,


                                             s/ *John A. DeSisto*
                                             Bruce A. Featherstone
                                             John A. DeSisto
                                             FEATHERSTONE PETRIE DESISTO LLP
                                             600 17th Street, Suite 2400S
                                             Denver, Colorado 80202-5424
                                             Telephone:  303-626-7100
                                             Facsimile:   303-626-7101
                                             bfeatherstone@featherstonelaw.com
                                             jdesisto@featherstonelaw.com

                                             and

                                             James S. Hill, ND ID# 03158
                                             Rebecca S. Thiem, ND ID# 03693
                                             Zuger Kirmis & Smith
                                             316 North 5th Street
                                             P.O. Box 1695
                                             Bismarck, North Dakota 58502-1695
                                             Telephone:  701-223-2711
                                             Facsimile:   701-223-7387
                                             jhill@zkslaw.com
                                             rthiem@zkslaw.com

                                             *Attorneys for Plaintiff*
                                             *Williston Basin Interstate Pipeline Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 19, 2010, the foregoing document entitled **WILLISTON BASIN'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** was filed electronically with the Clerk of the Court using the Court's Electronic Court Filing (ECF) system and that ECF will send a Notice of Electronic Filing (NEF) to the following parties:

Steven A. Storslee
Chris A. Edison
STORSLEE LAW FIRM, P.C.
1900 Burnt Boat Drive, Suite 101
P.O. Box 4007
Bismarck, North Dakota 58502-4007
sstorslee@storsleelaw.com
cedison@storsleelaw.com

Terrence R. Joy
David S. Evinger
Daniel W. Berglund
Richard B. Allyn
Gerardo Alcazar
ROBINS, KAPLAN, MILLER & CIRESI LLP
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, Minnesota  55402
trjoy@rkmc.com
dsevinger@rkmc.com
dwberglund@rkmc.com
rballyn@rkmc.com
galcazar@rkmc.com

                              s/ *Heidi Roehrs* _____